**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JBS HAIR, INC., | : | **Civil Action No. 22-1576 (SRC)** |
| | : | |
| | : | **OPINION & ORDER** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SLI PRODUCTION CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| JBS HAIR, INC., | : | **Civil Action No. 22-1577 (SRC)** |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HAIR ZONE, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| JBS HAIR, INC., | : | **Civil Action No. 22-1769 (SRC)** |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BEAUTY ESSENCE, INC., | : | |
| | : | |
| Defendant. | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the application for claim construction by Plaintiff JBS Hair Inc. ("JBS") and Defendants SLI Production Corp., Hair Zone, Inc., and Beauty Essence, Inc. (collectively, "Defendants"). These cases arise from patent infringement litigation involving three patents directed to hair accessories that include synthetic braiding hair: U.S. Patent Nos. 10,786,026 ("the '026 patent"); 10,945,478 ("the '478 patent"); and 10,980,301 ("the '301 patent"). Plaintiff JBS owns these patents and has sued each defendant separately for patent infringement; the three cases have been consolidated for case management purposes only. The parties seek claim construction of four sets of terms in these patents.[1]

## ANALYSIS

**I.     The law of claim construction**

A court's determination "of patent infringement requires a two-step process: first, the court determines the meaning of the disputed claim terms, then the accused device is compared to the claims as construed to determine infringement." Acumed LLC v. Stryker Corp., 483 F.3d 800, 804 (Fed. Cir. 2007). "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law." Teva Pharms. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 841 (2015).

The focus of claim construction is the claim language itself:

> It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude. Attending this principle, a claim construction analysis must begin and remain centered on the

---

[1] The opening briefs address a fifth term, "cardioidal lobes," but the responsive briefs state that the parties have resolved their dispute over this term.

> claim language itself, for that is the language the patentee has chosen to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'

Innova/Pure Water, Inc. v. Safari Water Filtration Sys., 381 F.3d 1111, 1115-1116 (Fed. Cir. 2004) (citations omitted).

The Federal Circuit has established this framework for the construction of claim language:

> We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.' We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application. The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation. . .
>
> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful. In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

Phillips v. AWH Corp., 415 F.3d 1303, 1312-1314 (Fed. Cir. 2005) (citations omitted).

## II. Claim construction of the disputed terms

At the outset, the Court notes two obstacles to claim construction in this case. First, Plaintiff contends that the four sets of terms "are clear on their face and require no construction."

(Pl.'s Br. at 1.)  Plaintiff proposes that all four sets of terms should have their plain meaning, but does not state what that plain meaning is.  Nor does the Joint Claim Construction Statement (Docket Entry No. 88) say anything more; for all four terms, Plaintiff's proposed construction is simply "plain meaning."  This violates Local Patent Rule 4.3,[2] which states:

> Not later than 30 days after the exchange of "Preliminary Claim Constructions" under L. Pat. R. 4.2(a), the parties shall complete and file a Joint Claim Construction and Prehearing Statement, which shall contain the following information:
> . . .
> (b) Each party's proposed construction of each disputed term . . .

The phrase "plain meaning" is not a proposed construction.  Plaintiff has failed to give the Court specific proposed constructions of the terms at issue.

Second, Defendants have built their claim construction arguments on a foundation of confused and erroneous premises:

> As stated above, the patents-in-suit generally relate to the arrangement and packaging of "bundled synthetic braiding hair."  The inventors here took what may have otherwise simple been concepts [*sic*] and described them in the patent claims in technical terms beyond what a lay juror would understand. One such example is use of the term "cardioidal lobes". As such, construction of these technical terms is necessary. Further, in serving as their own lexicographers, the inventors here have precisely defined certain terms in the specification. Those definitions are required to be construed terms consistent with the specification. As to other terms in the patent claims, those terms have technical meanings beyond what a layperson would understand and therefore require construction.

(Defs.' Br. at 10.)  There are two fundamental problems here: 1) the understanding of a "lay juror" has nothing to do with claim construction; and 2) Defendants contend that, for all of the terms at issue, the applicants acted as lexicographers and redefined each term.

---

[2] Also, L. Pat. R. 4.2(a) requires that the preliminary construction statement "includ[e] constructions for each term for which 'plain and ordinary' meaning is asserted."

Defendants cite no Federal Circuit law in support of their contention that the purpose of claim construction is to explain technical terms to the jury. The idea appears entirely contrary to the fundamental principles of claim construction stated in Phillips. The Phillips Court praised and quoted the Multiform decision:

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention--the inventor's lexicography--must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, viz., the patent specification and the prosecution history.

Phillips, 415 F.3d at 1313 (quoting Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998)). Defendants' contention that claim construction is intended to somehow help a lay juror understand the patent has no basis in Federal Circuit law. To the extent that Defendants have proposed constructions with this purpose, they have headed in the wrong direction entirely. Claim construction is done from the perspective of a POSA in the context of the intrinsic record; what the jury may or may not eventually understand has nothing to do with it.

As to Defendants' contention that the patentees acted as their own lexicographers, Defendants are confused about the special role of the "lexicographer" in the Federal Circuit law of claim construction.[3] On page 10 of their opening brief, Defendants assert that the patentees

---

[3] See, e.g.:

> Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill in the art would ascribe to a term when read in the context of the claim, specification, and prosecution history. There are only two

5

acted as their own lexicographers, but then on page 15, Defendants assert that "the patentee did not act as its own lexicographer." Then, on page 25, Defendants propose a lexicography theory for "rounded," but not for "middle" or "narrows" (both of which Defendants treat as ambiguous).

The practical result of all this is that the Court has before it a request for construction of four sets of claim terms, but no proposed constructions from Plaintiff, and a confused, problematic presentation from Defendants.

A. The "rounded" terms

The terms "rounded side" and "rounded end" appear in five claims in the '026 and '301 patents. For example, in the '301 patent:

> 11. The hair accessory of claim 1, the perimeter shaped as an inverted teardrop with a rounded end.

Plaintiff proposes that the "rounded" terms have their plain meaning; Defendants propose this construction: "the side or end of the substantially cardioid shaped perimeter opposite the cusp side, which must have an appearance shaped like a ball or circle." Neither party notes any question about the meaning of the words, "side" or "end."

Defendants contend that their proposed construction reflects the applicants' redefinition by implication, citing Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, 262 F.3d 1258,

---

exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution. To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an intent to redefine the term.

Kyocera Senco Indus. Tools, Inc. v. ITC, 22 F.4th 1369, 1378 (Fed. Cir. 2022) (citations omitted.)

1271 (Fed. Cir. 2001), which relies on the concept of redefinition by implication established in Vitronics Corp. v. Conceptronic, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning.")  In short, Defendants fail to demonstrate that, in the specification, the patentees used the word "rounded" in a manner inconsistent with its ordinary meaning.  Defendants point to nothing in the patent that relates to "rounded" having the appearance of a ball or circle.  A far as the Court can tell from Defendants' opening brief, the concept of "the appearance of a ball or circle" comes from nowhere; it shows up in the proposed construction without any origin in the patents at issue.

The "rounded" terms have their ordinary meaning, which is "curved."

B. "Middle"

The term "middle" appears in claim 17 of the '478 patent and claim 1 of the '301 patent. Claim 1 of the '301 patent is representative, as the phrasing in claim 17 is quite similar:

1. A hair accessory, comprising:

>bundled synthetic braiding hair, comprising:
>
>>a first bundle of synthetic hair strands having a first length; and
>>
>>a second bundle of synthetic hair strands having a second length that is shorter than the first length;
>>
>>wherein the bundled synthetic braiding hair is folded about a waist to define a perimeter having a first end collocated with the waist, a **middle**, and a second end located distally from the waist; and
>>
>>wherein a width of the perimeter narrows as the bundled synthetic braiding hair extends distally from the **middle** of the perimeter to the second end.

Plaintiff proposes that "middle" has its plain meaning; Defendants propose this construction:

"entire section between the end collocated with the waist and the end located distally from the waist."

At the outset, the Court observes that Defendants' proposed construction turns the middle into the entire region between one end and the other end: the middle becomes the entire bundle except the ends.  The Court also observes that the discussion in Defendants' opening brief contends that the patents are ambiguous about what the middle is, and that the specification is "silent" on the meaning of "middle."  (Defs.' Br. at 29.)  Somehow, despite having characterized the intrinsic evidence as shedding no light on the meaning of "middle," Defendants come up with their proposed construction, in which the middle is everything that is not an end.  If there is logic here, the Court does not discern it.

The Court concludes that "middle" has its ordinary meaning, "center" or "central."

C. "Narrows"

The term "narrows" appears in claim 17 of the '478 patent and claim 1 of the '301 patent, the same claims at issue for the term "middle."  Claim 1 of the '301 patent, just quoted, is representative, and "narrows" appears in the last subparagraph: "wherein a width of the perimeter **narrows** as the bundled synthetic braiding hair extends distally from the middle of the perimeter to the second end."  Plaintiff proposes that "narrows" has its plain meaning; Defendants propose this construction: "decreases continuously."  Plaintiff does not disagree with "decreases," but does object to "continuously."

Here, again, Defendants contend that neither the claims nor the specification make clear what "narrows" means.  Defendants argue that, given the ambiguity of the intrinsic evidence, the Court should look to extrinsic evidence, and offer a dictionary definition, "to decrease in width."

8

Defendants have pointed to no evidence, intrinsic or extrinsic, that supports the idea that "narrows" means "decreases continuously."

The Court concludes that "narrows" has its ordinary meaning, "decreases in width."

D.   The first and second bundles

The phrases, "a first/second bundle of synthetic hair strands" appear in multiple claims in all three patents at issue. Claim 1 of the '301 patent, already quoted in full, is representative:

1. A hair accessory, comprising:

> bundled synthetic braiding hair, comprising:
>
>> **a first bundle of synthetic hair strands** having a first length; and
>>
>> **a second bundle of synthetic hair strands** having a second length that is shorter than the first length;
>> . . .

Plaintiff contents that these phrases have their plain meaning. Defendants agree that the phrases have their plain meaning, and propose this construction: "a first/second plurality of synthetic hair strands grouped together, which is distinguishable from a second/first plurality of synthetic hair strands grouped together."

Defendants make two arguments in support of their proposed construction, first construing "bundle," then adding a requirement that first/second bundle must be distinguishable from the second/first bundle. Defendants have proposed a construction that obscures and complicates claim language that is clear already. Neither party has demonstrated any genuine, substantive dispute or question about what "bundle of synthetic hair strands" means. As for the addition of language requiring that the bundles be distinguishable, Defendants have needlessly muddied an already clear, simple expression. In the present exemplary claim, claim 1 of the

9

'301 patent, it states that the first bundle has a first length and the second bundle has a second shorter length. Thus, subsequent claim language clearly distinguishes the first and second bundles, and there is no benefit to a construction which adds redundant, superfluous language based on material outside the phrase at issue.

The Court concludes that "bundle of synthetic hair strands" has its ordinary meaning, "synthetic hair strands grouped together."

In conclusion, the Court construes the terms at issue as follows. "Rounded" has its ordinary meaning, which is "curved." "Middle" has its ordinary meaning, "center" or "central." "Narrows" has its ordinary meaning, "decreases in width." "Bundle of synthetic hair strands" has its ordinary meaning, "synthetic hair strands grouped together."

**SO ORDERED.**

  s/ Stanley R. Chesler<br>
STANLEY R. CHESLER, U.S.D.J.

Dated: January 18, 2024

10